**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LAURYN AKIA JONES,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **CITY OF CEDAR HILL, and** | § | |
| **DONALD NAJEE MERCER, Individually,** | § | |
| **Defendants.** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff ,LAURYN AKIA JONES, files this Original Complaint against Defendants CITY OF CEDAR HILL (the "City") and DONALD NAJEE MERCER ("Mercer"), and respectfully shows the Court as follows:

### I.
### PARTIES

1. Plaintiff, LAURYN AKIA JONES, is an individual and citizen of Texas residing in Dallas County, Texas. Because this action involves alleged sexual misconduct and exploitation by a law-enforcement officer, Plaintiff requests that sensitive identifying information not required by law be omitted from the public record.

2. Defendant, CITY OF CEDAR HILL, is a Texas home-rule municipality and a local governmental entity subject to suit under 42 U.S.C. § 1983. The City may be served through its **City Secretary at 285 Uptown Boulevard, Cedar Hill, Texas 75104**, or through any other person authorized by law to receive service.

3. Defendant, DONALD NAJEE MERCER, is a former Cedar Hill police officer. Mercer is

*Plaintiff's Original Complaint and Jury Demand - Page 1*

sued solely in his individual capacity under 42 U.S.C. § 1983 for his own conduct under color of state law. Plaintiff does not assert an official-capacity claim against Mercer and does not assert any Texas Tort Claims Act or Texas common-law cause of action against him. Mercer may be served personally at his residence located at **18725 Dallas Parkway, #1813, Dallas, Texas 75287**, or place of confinement at **Ellis County Jail / Wayne McCollum Detention Center, 300 S. Jackson Street, Waxahachie, Texas 75165**, if applicable, or wherever he may be found.

## II.
## JURISDICTION AND VENUE

4.      This Court has original federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

5.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related Texas Tort Claims Act claim because it forms part of the same case or controversy as the federal claims.

6.      Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Cedar Hill, Texas and surrounding areas within this District. Venue is properly laid in the Dallas Division.

## III.
## NOTICE AND CONDITIONS PRECEDENT

7.      All conditions precedent to Plaintiff's claims have occurred, have been performed, have been satisfied, or have been waived.

*Plaintiff's Original Complaint and Jury Demand - Page 2*

8.  Plaintiff provided written notice of her claims to the City on or about January 31, 2025. The notice identified or reasonably enabled the City to determine the time and place of the occurrence, Plaintiff's identity, the nature of the incident, Mercer's involvement, the City's patrol vehicle and equipment involved, and the injuries and claimed fault.

9.  Independently, the City had actual notice through records and investigations relating to the incident, including body-worn-camera and in-car recordings and metadata, dispatch and communications records, patrol-vehicle location records, arrest and transport records, incident reports, Mercer's post-incident communications, internal-affairs materials, the Texas Rangers investigation, and the criminal prosecution of Mercer.

**IV.**
**FACTUAL BACKGROUND**

10. At all relevant times, Mercer was employed by the City as a commissioned police officer. The City authorized him to initiate traffic stops; detain, arrest, search, and handcuff citizens; transport detainees; seize and preserve evidence; operate a marked patrol vehicle; carry a firearm and restraints; use body-worn and in-car recording systems; access police databases; and otherwise exercise coercive police authority.

11. During the incident made the basis of this suit, Mercer wore a police uniform, displayed police identification, possessed police equipment, operated a City-owned patrol vehicle, and exercised powers available to him because of his position. He acted under color of state law.

12. Before Plaintiff's encounter with Mercer, the City had received complaints, reports, admissions, warning signs, or other information indicating that Mercer posed a risk of sexually inappropriate or abusive conduct toward women he encountered through police work.

13. Upon information and belief, those pre-incident warning signs included sexual comments or propositions to women encountered while Mercer was on duty, allegations of inappropriate sexual touching during a traffic stop, inappropriate relationships with women first encountered through police duties, body-camera deactivation or noncompliance during citizen encounters, irregularities in evidence handling or reporting, and improper post-incident communications with women.

14. In one pre-incident matter arising from a domestic-violence call, Mercer allegedly admitted telling a woman encountered through police work that he wanted to have sex with her. In another pre-incident matter, a woman allegedly reported that Mercer groped her breasts during a traffic stop. Plaintiff alleges on information and belief that these matters, and related concerns about recording compliance and professional boundaries, were known to Cedar Hill supervisory personnel before August 7, 2024.

15. These alleged prior incidents were sufficiently similar to place the City on notice of a particular risk that Mercer could use police encounters, custody, isolation, charging discretion, seized property, or recording gaps to sexually exploit women.

16. The Cedar Hill Charter provides that the Chief of Police is the chief administrative officer of the Police Department, is responsible to the City Manager for administration of the Department, and carries out directives of the City Council. Plaintiff, therefore, does not allege merely from the Chief's title that the Chief was the City's final policymaker Plaintiff alleges that decisions concerning Mercer's continued patrol duties, supervision, discipline, restrictions, retention, and use of City police authority were made, approved, or knowingly permitted by officials with decision-making authority, and Plaintiff will identify through

*Plaintiff's Original Complaint and Jury Demand - Page 4*

discovery the City Council, City Manager, or other official or body possessing final policymaking authority for the relevant subject matter under Texas law, the Cedar Hill Charter, ordinances, and any lawful delegation.

17. Despite the alleged pre-incident warning signs, the City left Mercer on patrol with authority to stop, detain, handcuff, transport, and isolate female motorists and detainees. Upon information and belief, the City failed to impose restrictions reasonably responsive to the known risk, failed to meaningfully address recurring body-camera or professional-boundary concerns, and failed to provide corrective supervision or remedial training directed at the misconduct of which it had notice.

18. The City maintained written policies concerning body-camera activation, custodial transportation, detainee safety, evidence handling, reporting, professional conduct, and investigation of officer misconduct. Plaintiff alleges that, as applied to Mercer after the City received pre-incident warning signs, those safeguards were not meaningfully enforced.

19. On or about August 7, 2024, Mercer initiated a traffic stop of Plaintiff, then approximately 27 years old, and investigated her for suspected driving while intoxicated.

20. Mercer placed Plaintiff under arrest or otherwise restrained her freedom of movement, handcuffed her, and confined her in the rear seat of his City-owned patrol vehicle. Plaintiff was visibly and substantially intoxicated.

21. Mercer knew Plaintiff was impaired, restrained, unable to leave, dependent upon him for transportation and release, and subject to his authority over her detention and potential criminal exposure.

22. After placing Plaintiff in his patrol car, Mercer drove to the City jail, where he stopped

briefly and went inside the building, leaving Plaintiff handcuffed in the patrol vehicle.

23.    Mercer then transported Plaintiff to Methodist Midlothian Medical Center for a blood draw. During the transport, Mercer began making flirtatious comments to Plaintiff.

24.    After driving for several minutes, Mercer asked whether Plaintiff's seat belt was fastened. Although Plaintiff told him it was, Mercer pulled over, exited the driver's seat, approached the rear passenger area, and purported to check the seat belt while Plaintiff remained handcuffed. He then returned to the driver's seat and proceeded to Methodist Midlothian Medical Center.

25.    When Plaintiff and Mercer returned to Mercer's patrol car after the hospital blood draw, Plaintiff quietly tried to tell Mercer that she had marijuana in her left pocket.  Mercer told Plaintiff that she could speak louder because his camera was turned off.  Plaintiff then advised again that she had marijuana in her pocket.

26.    Rather than retrieving the marijuana through an ordinary evidence-handling procedure while Plaintiff was outside the vehicle, Mercer placed Plaintiff into the rear seat and reached into or near her clothing to retrieve the marijuana from her pocket. During this close custodial encounter, Mercer and Plaintiff kissed.

27.    Plaintiff alleges that any apparent participation or acquiescence by her occurred while she was substantially intoxicated, handcuffed, under arrest, unable to leave, and subject to the authority of an armed officer who controlled her detention, seized property, and potential criminal charges. Plaintiff alleges that the intimate sexual contact was not the product of free and voluntary consent.

28.    Mercer told Plaintiff that he would return the marijuana to her later if she gave him her

telephone number. Plaintiff provided her number while she remained intoxicated, handcuffed, and in his custody.

29. After leaving the hospital, Mercer asked Plaintiff if she felt like she needed to urinate or vomit. Plaintiff said she did not. However, Mercer proceeded to an empty or isolated parking lot at Navarro College and stopped the patrol vehicle.

30. Mercer removed or assisted Plaintiff from the patrol vehicle while she remained restrained and in his custody, positioned her away from the in-car camera's view, and asked her to perform oral sex on him.

31. Plaintiff became frightened and refused. Mercer repeated the request multiple times, and Plaintiff refused each time.

32. Throughout the encounter, Plaintiff remained intoxicated, restrained, isolated, and subject to the control of an armed officer who controlled her transportation, custody, seized marijuana, and potential criminal exposure.

33. Plaintiff alleges that Mercer used, or attempted to use, the coercive authority of his office and his control over Plaintiff's detention and seized marijuana to obtain a sexual benefit. Plaintiff reasonably feared that refusal could affect whether she remained detained, faced additional charges, or received harsher treatment.

34. After Plaintiff refused Mercer's sexual demands, Mercer returned her to the patrol vehicle and ultimately transported her to the City jail.

35. The diversion to the isolated parking lot, the stop there, and the conduct undertaken for Mercer's personal sexual purpose added time to Plaintiff's custody that was unrelated to the legitimate mission of investigating the traffic offense, obtaining the blood sample,

transporting Plaintiff for booking, or completing any other lawful police function.

36. Several times during her detention, Plaintiff believes she went in and out of consciousness. Mercer observed or heard her distress and knew she was substantially intoxicated. These facts are pleaded as part of the circumstances showing Plaintiff's vulnerability, coercion, and resulting damages. Plaintiff does not presently assert a separate constitutional medical-care count based on these facts.

37. Mercer did not properly inventory, preserve, or book the marijuana removed from Plaintiff and later represented that it had been disposed of. Plaintiff alleges that Mercer's treatment of the marijuana further demonstrates his use of seized evidence and charging authority for an improper personal purpose.

38. After the incident, Mercer communicated with Plaintiff by text message. Plaintiff confronted him about taking her to an isolated location and asking her to perform oral sex and informed him that she could report him.

39. The Texas Rangers subsequently investigated Mercer's conduct. Mercer was criminally prosecuted for Official Oppression arising from his conduct toward Plaintiff.

40. On June 10, 2026, an Ellis County jury convicted Mercer of the Class A misdemeanor offense of Official Oppression, and he was sentenced to 300 days in the Ellis County Jail.

41. Plaintiff pleads the conviction and underlying criminal-case evidence only to the extent admissible and legally relevant. Plaintiff relies on collateral estoppel only as to any issue that was actually litigated, necessarily decided, and otherwise satisfies the requirements for issue preclusion.

## V.
## FEDERAL CLAIMS AGAINST MERCER INDIVIDUALLY

42. Counts One through Three are asserted solely against Mercer in his individual capacity under 42 U.S.C. § 1983. They are not asserted against Mercer in his official capacity and are not brought under Texas law.

## COUNT ONE - FOURTH AMENDMENT UNREASONABLE SEIZURE AND UNLAWFUL PROLONGATION OF DETENTION

43. Plaintiff incorporates the preceding paragraphs.

44. Plaintiff was seized within the meaning of the Fourth Amendment when Mercer stopped her, restrained her, placed her in handcuffs, and confined her in the patrol vehicle.

45. Even assuming the initial stop and arrest were lawful, Mercer lacked lawful authority to extend or divert Plaintiff's detention for a personal sexual purpose unrelated to the mission of the stop, arrest, blood draw, transportation, or booking.

46. After the blood draw, Mercer was required to proceed with legitimate custodial duties within a reasonable time. Instead, he diverted Plaintiff to an isolated parking lot, stopped the patrol vehicle, removed or assisted her from the vehicle, and used the resulting isolation to repeatedly solicit oral sex.

47. The additional detention attributable to this diversion and sexual solicitation was unsupported by probable cause, reasonable suspicion, or any legitimate law-enforcement objective and was objectively unreasonable.

48. Mercer intentionally used the seizure itself as a means to obtain isolation, control, and leverage over Plaintiff for his personal sexual gratification.

49. At the time of the incident, no objectively reasonable officer could believe that a lawful arrest authorized him to prolong or manipulate a detainee's custody for the purpose of sexual

solicitation or personal gratification.

50.    Mercer's conduct directly and proximately caused Plaintiff's injuries and damages.

## COUNT TWO - FOURTH AMENDMENT UNREASONABLE FORCE AND SEXUAL BODILY INTRUSION

51.    Plaintiff incorporates the preceding paragraphs.

52.    Because Plaintiff was handcuffed, under arrest, and not free to leave, physical force and bodily intrusion by Mercer during the custodial encounter are governed by the Fourth Amendment's objective-reasonableness requirement.

53.    Mercer engaged in sexual physical contact with Plaintiff, including kissing her during the custodial encounter, while she was substantially intoxicated, handcuffed, confined or controlled by him, and subject to his authority over her detention and potential charges.

54.    The sexual physical contact served no legitimate search, safety, transportation, evidence-retrieval, arrest, or other law-enforcement purpose.

55.    Plaintiff alleges that the contact was coercive and nonconsensual in the constitutional sense because any apparent acquiescence occurred under official restraint, intoxication, isolation, and the officer's control over her custody and criminal exposure.

56.    No governmental interest justified sexual physical contact undertaken for an officer's personal gratification during the seizure. Such conduct was objectively unreasonable.

57.    Mercer acted intentionally and for a personal sexual purpose.

58.    At the time of the incident, it was clearly established, at minimum as an obvious constitutional principle, that an officer could not use custody over a restrained person to engage in nonconsensual physical sexual conduct for personal gratification.

59.    Mercer's conduct directly and proximately caused Plaintiff's injuries and damages.

**COUNT THREE - FOURTEENTH AMENDMENT BODILY INTEGRITY AND SUBSTANTIVE DUE PROCESS, PLEAD IN THE ALTERNATIVE**

60.    Plaintiff incorporates the preceding paragraphs.

61.    Plaintiff alternatively pleads this count under Federal Rule of Civil Procedure 8(d), and only to the extent the Court determines that any portion of Mercer's sexual abuse or coercive conduct falls outside the temporal or doctrinal scope of the Fourth Amendment seizure analysis.

62.    The Fourteenth Amendment protects the liberty interest in bodily integrity against arbitrary and conscience-shocking sexual abuse by a government official acting under color of law.

63.    Mercer used the authority of his office, Plaintiff's intoxication and restraint, an isolated location, seized marijuana, and the threat or possibility of criminal consequences to sexually proposition, coerce, and exploit Plaintiff.

64.    Such conduct was intentional, unrelated to any legitimate governmental purpose, and constituted an abuse of governmental power.

65.    At the time of the incident, it was well established that physical sexual abuse by a law-enforcement officer for the officer's sexual gratification violates the constitutional right to bodily integrity, and that official intimidation or coercion cannot be converted into constitutionally meaningful consent.

66.    To the extent this count applies, Mercer's conduct directly and proximately caused Plaintiff's injuries and damages.

**VI.**
**FEDERAL CLAIMS AGAINST THE CITY**

**COUNT FOUR - MUNICIPAL LIABILITY AGAINST THE CITY UNDER 42 U.S.C. § 1983**

67. Plaintiff incorporates the preceding paragraphs.

68. The City is not liable under § 1983 merely because it employed Mercer. Plaintiff seeks municipal liability only for a municipal policy, custom, deliberate choice, or deliberately indifferent omission attributable to the City that was a moving force behind the constitutional violations.

69. Before August 7, 2024, the City allegedly had notice of complaints and prior substantially similar misconduct or warning signs involving Mercer and women encountered through his police duties, including sexual comments or propositions, alleged sexual touching during a traffic stop, misuse of official authority for personal purposes, and body-camera or professional-boundary concerns.

70. The alleged pre-incident information placed City decision makers on notice of the particular risk that Mercer could use traffic stops, custody, isolation, recording gaps, seized evidence, or charging discretion to sexually exploit another woman.

71. Despite that notice, the City allegedly failed to meaningfully discipline or restrict Mercer, left him in active patrol duties with unsupervised authority over female motorists and detainees, failed to meaningfully address known recording or professional-boundary concerns, and failed to provide corrective supervision or remedial training tailored to the risk revealed by the prior incidents.

72. Plaintiff does not rely on a generalized allegation that Cedar Hill failed to teach police officers not to commit sexual misconduct. Rather, Plaintiff alleges deliberate indifference arising from the City's response, or lack of response, after it received notice that Mercer himself had allegedly engaged in substantially similar misconduct and nevertheless continued

to place him in materially similar encounters with women.

73. Plaintiff further alleges, upon information and belief, that after receiving such notice the City failed to meaningfully enforce existing safeguards as to Mercer, including body-camera compliance, supervisory review, custodial-transport oversight, evidence accountability, professional-boundary requirements, a shift change from nights to days, and investigation and discipline of officer misconduct.

74. To the extent discovery establishes repeated substantially similar pre-incident occurrences and repeated municipal inaction, Plaintiff alleges that the City's pattern of non-enforcement and failure to discipline or supervise Mercer was persistent enough to constitute a municipal custom or practice.

75. Alternatively, Plaintiff alleges that a final policymaker for the relevant subject matter made or approved the deliberate decision to retain Mercer in unrestricted patrol duties despite known substantially similar misconduct. Under the Cedar Hill Charter, the Chief of Police is responsible to the City Manager and carries out directives of the City Council; accordingly, Plaintiff will identify through discovery whether the City Council, City Manager, or another official or body possessed final policymaking authority over the specific disciplinary, retention, or patrol-assignment decision at issue.

76. Plaintiff alleges that any decision, ratification, or deliberate course of inaction is attributable to the City only if made or approved by an official or body possessing final policymaking authority under state and local law. Plaintiff does not rely solely upon the Police Chief's status as a department head.

77. The risk that materialized on August 7, 2024 was substantially similar to the risk allegedly

revealed by Mercer's prior conduct; namely, that Mercer encountered a woman through police work, exercised coercive authority over her, controlled her custody and potential charges, used isolation and recording gaps, and pursued a personal sexual objective.

78. The City's alleged deliberate indifference, failure to impose meaningful restrictions or discipline after substantially similar warning signs, failure to provide corrective supervision or remedial training, and knowing non-enforcement of safeguards as to Mercer were direct causal links and moving forces behind the constitutional injuries suffered by Plaintiff.

79. Plaintiff pleads these municipal-liability theories in the alternative. Discovery is expected to include internal-affairs files, prior complaints, body-camera audit records, disciplinary materials, training and remedial-training records, patrol-assignment decisions, evidence-accountability records, and documents identifying the City's final policymaker for the relevant decisions.

## VII.
## STATE CLAIMS AGAINST THE CITY

### COUNT FIVE - TEXAS TORT CLAIMS ACT: NEGLIGENT OPERATION OR USE OF A MOTOR-DRIVEN VEHICLE AGAINST THE CITY

80. Plaintiff incorporates the preceding paragraphs.

81. Plaintiff alternatively pleads this count under Federal Rule of Civil Procedure 8(d) and solely against the City under Texas Civil Practice and Remedies Code § 101.021(1). It is limited to injuries, if any, proximately caused by negligent operation or use of the City-owned patrol vehicle, separate and apart from injuries caused solely by Mercer's intentional sexual misconduct.

82. The City owned the patrol vehicle Mercer used while performing assigned

custodial-transport duties. Mercer was acting within the general scope of his assigned employment when operating that vehicle to transport Plaintiff following her arrest.

83. During the custodial transport, Plaintiff was substantially intoxicated, restrained, and later repeatedly lost consciousness or became nonresponsive.  Mercer was aware of Plaintiff's physical condition as evidenced by his asking Plaintiff if she needed to vomit.

84. Plaintiff alleges that, to the extent supported by medical and other evidence, Mercer negligently operated or used the patrol vehicle during the assigned transport by continuing to transport an incapacitated and restrained passenger without appropriate monitoring or timely use of the vehicle for an authorized medical or custodial destination, and by using the vehicle's movement and operation in a manner that independently worsened Plaintiff's physical condition or caused a distinct injury.

85. Plaintiff does not allege that the mere presence of the patrol vehicle, its use as a location for intentional misconduct, a failure to use other tangible property, negligent supervision, negligent retention, negligent entrustment, or failure to enforce policy independently waives governmental immunity.

86. Plaintiff seeks recovery under this count only if the evidence establishes an injury proximately caused by the actual operation or use of the motor-driven vehicle that would impose liability on a private person under Texas law and that is not barred by the intentional-tort exclusion or any other immunity provision.

87. If discovery and medical evidence do not establish such a distinct vehicle-caused injury, Plaintiff does not seek to expand this count beyond the statutory waiver.

## VIII.
## COLLATERAL ESTOPPEL AND CRIMINAL CONVICTION

88.    Mercer was criminally prosecuted for Official Oppression arising from his conduct toward Plaintiff, was represented by counsel, and was convicted by a jury.

89.    Plaintiff invokes issue preclusion only as to any factual issue that was actually litigated, essential to the criminal judgment, identical to an issue presented here, and otherwise satisfies applicable preclusion law.

90.    Independently of issue preclusion, Plaintiff may offer the criminal judgment, testimony, exhibits, admissions, and other criminal-case evidence to the extent admissible under the Federal Rules of Evidence.

## IX.
## DAMAGES

91.    As a direct and proximate result of the constitutional violations and other actionable conduct alleged above, Plaintiff has suffered damages including past and future mental anguish, emotional distress, psychological trauma, fear and anxiety, humiliation, shame and embarrassment, loss of dignity and personal security, post-traumatic symptoms, sleep disturbance, impairment and loss of enjoyment of life, and reasonable and necessary medical or psychological-care expenses to the extent proven.

92.    Plaintiff seeks compensatory damages against Mercer individually under 42 U.S.C. § 1983 and compensatory damages against the City under § 1983 to the extent municipal liability is established.

93.    Plaintiff seeks damages against the City under the Texas Tort Claims Act only to the extent governmental immunity is waived and subject to all applicable statutory limitations.

94.    Plaintiff does not seek double recovery for the same injury.

## X.

**PUNITIVE DAMAGES AGAINST MERCER ONLY**

95.    Plaintiff alleges that Mercer acted with malicious intent, reckless indifference, and callous disregard for Plaintiff's federally protected rights by exploiting an intoxicated and restrained detainee for personal sexual gratification, isolating her, using his control over custody and seized evidence as leverage, and repeatedly soliciting sexual conduct.

96.    Plaintiff therefore seeks punitive damages against Mercer individually under federal law. Plaintiff does not seek punitive damages against the City.

**XI.**
**ATTORNEY'S FEES AND COSTS**

97.    Plaintiff seeks reasonable attorney's fees and litigation expenses under 42 U.S.C. § 1988, together with taxable court costs. Plaintiff does not seek attorney's fees under the Texas Tort Claims Act except to the extent independently authorized by law.

**XII.**
**PREJUDGMENT AND POST-JUDGMENT INTEREST**

98.    Plaintiff seeks prejudgment and post-judgment interest to the extent permitted by applicable law.

**XIII.**
**EVIDENCE PRESERVATION**

99.    Plaintiff requests preservation of relevant evidence, including body-camera and in-car video, audio, audit logs, and metadata; patrol-vehicle GPS, AVL, and telematics records; CAD, dispatch, and radio records; mobile-data-terminal records; text messages and relevant communications; arrest, transport, booking, evidence-room, and marijuana-related records; internal-affairs and disciplinary materials; prior complaints concerning Mercer; body-camera compliance reports; supervisory reviews; performance evaluations; training and

*Plaintiff's Original Complaint and Jury Demand - Page 17*

remedial-training records; applicable policies and general orders; Texas Rangers materials in Defendants' possession; criminal-trial exhibits and transcripts; termination records; communications concerning Mercer by the Police Department, City Manager, or City Council; and records identifying final policymaking authority.

100.    Plaintiff requests that Defendants suspend routine destruction, deletion, overwriting, recycling, or retention schedules affecting evidence relevant to the claims and defenses.

## XIV.
## JURY DEMAND

101.    Plaintiff demands a trial by jury on all issues so triable.

## XV.
## PRAYER

102.    **WHEREFORE**, Plaintiff respectfully requests that Defendants be cited to appear and answer and that, after trial, Plaintiff recover: (a) compensatory damages against Mercer individually under 42 U.S.C. § 1983; (b) compensatory damages against the City under § 1983 and Monell to the extent municipal liability is established; (c) damages against the City under the Texas Tort Claims Act only to the extent immunity is waived under the narrow motor-vehicle theory pleaded above; (d) punitive damages against Mercer individually; (e) reasonable attorney's fees and expenses under 42 U.S.C. § 1988; (f) taxable court costs; (g) prejudgment and post-judgment interest as permitted by law; and (h) all other legal or equitable relief to which Plaintiff proves entitlement.

Respectfully submitted,

**PAYMA, KUHNEL & SMITH, P.C.**
PAYMA LAW CENTER
1126 N. Zang Blvd.
Dallas, Texas 75203
(214) 999-0000
(214) 999-1111  Facsimile


By: */s/ Michael D. Payma*
    **MICHAEL D. PAYMA**
    **State Bar No. 00790560**
    Michael@PKSattorneys.com
    **SAMMIE M. SMITH**
    State Bar No.  24044902
    Sammie@PKAattorneys.com
ATTORNEYS FOR PLAINTIFF

*Plaintiff's Original Complaint and Jury Demand - Page 19*